**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1079-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT SABATINI,

     Defendant-Appellant.

_____

> Submitted September 13, 2018 – Decided September 27, 2018
>
> Before Judges Reisner and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 10-04-0223.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Alison S. Perrone, Designated Counsel; William Welaj, on the brief).
>
> Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Robert Sabatini appeals from a July 24, 2017 order denying his petition for post-conviction relief (PCR). We affirm.

## I.

Defendant was convicted of first-degree murder and was sentenced to fifty years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. We affirmed the conviction and sentence on defendant's direct appeal. State v. Sabatini, No. A-1740-12 (App. Div. Feb. 11, 2016), certif. denied, 226 N.J. 212 (2016).

Our opinion summarized the trial evidence, and the summary provides useful context for this appeal:

> The trial concerned the murder of Charles Ray on Back Neck Road, an isolated country road in Cumberland County, in the late evening of September 13, 2008 or the early morning of September 14. The murder occurred within a few hundred feet of defendant's house, which was the only house on that part of Back Neck Road. Apart from expert testimony, which will be discussed in detail later, the State's case was fairly straightforward albeit not airtight. Defendant lived not far from the murder scene. An impartial witness encountered defendant and pointed out Ray's body lying in the road. Defendant claimed to be shocked at hearing this news. Defendant was wearing a gray tank top and pants which, on later analysis, proved to be stained with Ray's blood. Defendant knew Ray's habits, knew Ray would be

2

driving down the darkened back road that night, and knew Ray would pull over if flagged down by someone he knew. Defendant had flagged down Ray on prior occasions to ask for money. Defendant needed money to buy crack cocaine that night, and made multiple phone calls to two different drug dealers. According to two witnesses, defendant had previously expressed disdain for Ray and said he should be killed for encouraging the drug trade on Back Neck Road.

The defense case was that there were a number of other individuals living on or near Back Neck Road who had personal or financial motives to kill Ray, and that the police had focused too quickly on defendant as a suspect and ignored other possible suspects. The defense also contended that defendant had approached Ray's body after the murder and could have gotten a bit of Ray's blood on his clothing at that time. The defense also contended to the jury that, given the extent of Ray's wounds and the amount of blood they produced, his attacker would have been drenched in blood, as compared to the few drops on defendant's clothing.

Much of the State's lengthy trial presentation was devoted to responding to those aspects of the defense, by showing that the police investigated every possible suspect, and that defendant did not approach Ray's body after the murder. The State also presented expert testimony designed to show that the drops of Ray's blood on defendant's clothing were similar in shape and pattern of distribution to those on Ray's clothing. According to the expert, the blood drops on defendant's shirt were typical of the spatter pattern caused by blows with a blunt object, rather than a swipe pattern caused by accidentally touching Ray's bloody clothing or the blood near his body. The expert also explained to the jury how, during an attack with a blunt object, an attacker might get very little blood on his own clothing.

[<u>Id.</u> slip op. at 3-5. ]

In his current appeal, defendant raises many of the same arguments presented to and rejected by the PCR judge. His counseled brief presents the following points of argument:

<u>POINT I</u>:

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF.

B. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO CALL SEVERAL WITNESSES WHO WOULD HAVE PROVIDED BENEFICIAL AND POTENTIALLY EXCULPATORY TESTIMONY FOR THE DEFENDANT.

1. TRIAL COUNSEL'S FAILURE TO MAKE APPROPRIATE ARRANGEMENTS TO PRESENT THE TESTIMONY OF THE

4

DEFENDANT'S FATHER, THOMAS SABATINI, TO THE JURY.

2. TRIAL COUNSEL'S FAILURE TO PRESENT RELEVANT TESTIMONY THROUGH THE DEFENDANT'S SISTER, LISA HILES.

C. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO REQUEST THE TRIAL COURT INSTRUCT THE JURY REGARDING THE LESSER INCLUDED OFFENSE OF PASSION/PROVOCATION MANSLAUGHTER.

D. THE DEFENDANT DID NOT RECEIVE ADEQUATELEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO TAKE APPROPRIATE ACTION WHEN INFORMED A JUROR HAD POSSIBLY BEEN SLEEPING THROUGH PART OF THE TRIAL.

Defendant's pro se supplemental brief argues that the trial court should have held an evidentiary hearing on his petition. He also presents the following points, which we have formatted for clarity.

POINT II:

PETITIONER'S CLAIM THAT DEFENSE TRIAL COUNSEL WAS INEFFECTIVE.

A. Alleged failure to retain experts.

5

A-1079-17T3

B.     State did not submit evidence concerning DNA not belonging to the defendant or the decedent.

C.     Counsel failed to investigate original crime scene reports.

D.     Trial court allowed the state to enter suppressed evidence.

E.     Petitioner's argument that appellate counsel was ineffective

F.     Alleged failure to take appropriate action when juror slept.

G.     Petitioner[']s claim that the court failed to include lesser included offenses.

POINT III:

ARGUMENTS MADE IN PETITIONER'S PRO SE SUBMISSIONS.

A.   Trial counsel failure to move to dismiss indictment.

B.   Petitioner's allegation of prosecutorial misconduct.

After reviewing the record in light of the applicable legal standards, we conclude that defendant's arguments are uniformly without merit, and we affirm substantially for the reasons stated by Judge Jean S. Chetney in her twenty-seven page written opinion. We add the following brief comments.

6

Defendant contends that his attorney should have arranged for a de bene esse deposition of his ailing father (now deceased), who defendant asserts could have provided him with an alibi. After reading the father's written statement to the police, we conclude that the father's testimony would not have provided an alibi. According to the father, on the night of the murder, defendant kept periodically leaving the house for a few minutes at a time and then returning. The murder took place close to defendant's house, and the father did not know how long defendant was gone during his last absence. The father's testimony would not have eliminated the possibility that on one of his excursions outside the house, defendant flagged down Ray's car and killed him.

Contrary to defendant's argument, his trial counsel was not ineffective in failing to request a passion/provocation manslaughter charge. There was no evidentiary basis to charge the jury as to passion/provocation manslaughter. Moreover, such a charge would have been inconsistent with the defense theory that defendant liked the victim and had nothing to do with killing him.

Like the PCR judge, we find no merit in defendant's claim that the trial judge should have interviewed a juror who defendant now claims may have been sleeping. The issue of whether the juror was remaining "alert" was raised at the beginning of a trial day. The trial judge indicated that he had personally

7

observed the juror. Neither the judge nor the attorneys stated that the juror had been sleeping. None of the attorneys asked the judge to interview the juror or take any further action at that time. The issue did not come up again that day or any other day during the trial. Defendant's PCR argument is not supported by legally competent evidence that the juror was asleep at any time during the trial. "[B]ald assertions" are insufficient to create a prima facie case of ineffective assistance of counsel. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Because defendant did not present a prima facie case of ineffective assistance, the PCR judge did not err in deciding the petition without an evidentiary hearing. See State v. Preciose, 129 N.J. 451, 462 (1992). Defendant's remaining appellate arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION